UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

THU THUY NGUYEN.,

                Plaintiff,

vs.

PENNYMAC LOAN SERVICES, LLC, *et al.*,

                Defendants.

Case No.: 2:25-cv-00362-GMN-DJA

**ORDER GRANTING MOTIONS TO DISMISS**

        Pending before the Court is the Motion to Dismiss Petition for Removal, (ECF No. 6), filed by Defendant PennyMac Loan Services, LLC.  Plaintiff filed a Response, (ECF No. 13), to which PennyMac filed a Reply, (ECF No. 15).  Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Federal National Mortgage Association ("Fannie Mae") filed Joinders, (ECF Nos. 6 and 27, respectively), to PennyMac's Motion to Dismiss.  Further pending before the Court is Plaintiff's Motion to Strike PennyMac's Reply and MERS's Joinder, (ECF No. 18).  Defendants PennyMac and MERS filed a Response, (ECF No. 20), to which Plaintiff filed a Reply, (ECF No. 21).  Additionally pending before the Court is Fannie Mae's Motion to Dismiss, (ECF No. 26).  Plaintiff filed a Response, (ECF No. 29), to which Fannie Mae filed a Reply, (ECF No. 30).

        For the reasons discussed below, the Court DENIES Plaintiff's Motion to Strike Defendants' Reply and Joinder, and GRANTS both PennyMac's and Fannie Mae's Motions to Dismiss.

///

///

///

## I. FACTUAL BACKGROUND

This case arises out of a loan agreement entered into by Plaintiff and PennyMac on December 12, 2024, which Plaintiff used to purchase property located at 9878 Belikove Manor Avenue, Las Vegas, Nevada 89178 ("the Property"). (Compl. ¶¶ 3, 10, ECF No. 1-1). Plaintiff executed a $782,372.00 promissory note secured by a deed of trust ("DOT") which named PennyMac as the lender and MERS as the beneficiary. (*Id.*) On December 30, 2024, Plaintiff sent a Qualified Written Request ("QWR") to PennyMac, which it received on January 6, 2025. (*Id.* ¶ 15). On January 7, 2025, Plaintiff received notice that Fannie Mae had purchased the loan from PennyMac. (*Id.* ¶ 14). Plaintiff asserts claims for quiet title, fraudulent misrepresentation, breach of contract, and "violations of federal and state law." (Compl. ¶¶ 16–26). Defendants now move to dismiss all of Plaintiff's claims against them.

## II. LEGAL STANDARD

### A. Motion to Strike

FRCP 12(f) provides that the court "may order stricken from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). Moreover, when considering a motion to strike, courts must view the pleading in the light most favorable to the pleader. *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).

### B. Motion to Dismiss for Failure to State a Claim

Dismissal is appropriate under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all

1  factual allegations as true, legal conclusions couched as factual allegations are insufficient.
2  *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and
3  conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*
4  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as
5  true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,
6  678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the
7  plaintiff pleads factual content that allows the court to draw the reasonable inference that the
8  defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer
9  possibility that a defendant has acted unlawfully." *Id.*

10  If the court grants a motion to dismiss for failure to state a claim, leave to amend should
11  be granted unless it is clear that the deficiencies of the complaint cannot be cured by
12  amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant
13  to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in
14  the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the
15  movant, repeated failure to cure deficiencies by amendments previously allowed, undue
16  prejudice to the opposing party by virtue of allowance of the amendment, futility of
17  amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

18  **III.  DISCUSSION**
19  The Court first addresses Plaintiff's Motion to Strike before turning to Defendants'
20  Motions to Dismiss.

21  **A. Plaintiff's Motion to Strike Defendants' Reply and Joinder**
22  Plaintiff moves to strike PennyMac's Reply in support of its Motion to Dismiss, (ECF
23  No. 15), and MERS's Joinder to that Reply, (ECF No. 16), as untimely filed. (Mot. Strike 1:22–
24  25, ECF No. 18).  PennyMac filed its Reply on March 25, 2025, and MERS filed its Joinder on
25  the same day. (*See* Notice of Electronic Filing for PennyMac Reply, ECF No. 15); (Notice of

1  Electronic Filing for MERS Joinder, ECF No. 16). Plaintiff contends that the deadline to file
2  both documents was March 24, 2025, and both thus run afoul of Local Rule 7-2(b). (Mot.
3  Strike 3:6–8). Plaintiff takes this deadline from the docket entry associated with her Response
4  to PennyMac's Motion to Dismiss, which states "[r]eplies due 3/24/2025." (Docket Text for
5  Resp., ECF No. 13). PennyMac and MERS argue that while Plaintiff filed her Response on
6  March 17, 2025, which would place the reply deadline on March 24, 2025, they did not receive
7  service of the document until March 18, 2025, making their March 25, 2025 filing timely.
8  (Resp. Mot. Strike 1:22–28, ECF No. 20).

9       Local Rule 7-2(b) states that the "deadline to file and serve any reply in support of [a]
10 motion is seven days after *service* of the response." LR 7-2(b) (emphasis added). While
11 Plaintiff filed her Response on March 17, 2025, that Response was not served on PennyMac
12 and MERS until March 18, 2025. (*See* Notice of Electronic Filing for Resp., ECF No. 13 ("The
13 following transaction was entered on 3/18/2025 at 5:06 PM PDT and filed on 3/17/2025")).
14 Thus, the operative deadline for replies under Local Rule 7-2(b) was March 25, 2025. While
15 the docket entry associated with Plaintiff's Response states that replies were due March 24,
16 2025, "[f]iling deadlines listed in Notices of Electronic Filing are provided as a courtesy only."
17 LR IC 3-1(d). If system-generated deadlines conflict with the Local Rules, the latter controls.
18 *Id.* Here, because PennyMac and MERS filed their Reply and Joinder on March 25, 2025,
19 seven days after they received service of Plaintiff's Response, their filings are timely.
20 Accordingly, the Court DENIES Plaintiff's Motion to Strike.

21     **B. Defendants' Motions to Dismiss**

22     The Court now turns to the Motion to Dismiss filed by PennyMac and joined by MERS
23 and Fannie Mae, and the Motion to Dismiss filed by Fannie Mae. The Court addresses each
24 claim in Plaintiff's Complaint in turn.
25 ///

### 1. Quiet Title Claim

Plaintiff alleges four defects in the DOT which Plaintiff contends render it invalid under Nevada Revised Statute ("NRS") 40.010: (1) the DOT lacks the authorized lender's signature; (2) the promissory note was never recorded; (3) the promissory note and the DOT were bifurcated; and (4) the loan was transferred to Fannie Mae without proper notice. (*See* Compl. ¶¶ 11–14, 16–19). Plaintiff also argues that Defendants lack standing to claim an interest in the property. (*Id.* ¶ 18). Defendants argue that Plaintiff has no legal basis to bring a quiet title action because the debt on the Property remains unpaid, and that none of the alleged defects invalidate the DOT under Nevada law. (PennyMac Mot. Dismiss 3:16–6:11, ECF No. 6); (Fannie Mae Mot. Dismiss 4:3–16, ECF No. 26).

NRS 40.010 states that "an action may be brought by any person against another who claims an interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." NRS 40.010. The "burden of proof rests with the plaintiff to prove good title in himself." *Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996), *abrogated on other grounds by Delgado v. Am. Family Ins. Grp.*, 217 P.3d 563, 567 (Nev. 2009). To prevail on a quiet title claim, Plaintiff must overcome the presumption in favor of the record titleholder and show that they have paid any debt owed on the property. *Olarte v. DHI Mortg.*, No 2:12-cv-0044-LDG-PAL, 2013 WL 5492694, at *2 (D. Nev. Sept. 27, 2013).

Here, Plaintiff concedes that she has not paid the debt owed on the Property, arguing instead that a quiet title action under NRS 40.010 does not require full payment of a debt if the loan itself is invalid. (Resp. PennyMac Mot. Dismiss. 4:18–28, ECF No. 13). Plaintiff's support for this proposition consists of a District of Nevada case which this Court cannot locate because the case is fake,[1] and an inapplicable section of *Chapman v. Deutsche Bank Nat'l Trust*

---

[1] In her Response to PennyMac's Motion to Dismiss, Plaintiff cites to four cases which this Court has been

1  *Co.*, 302 P.3d 1103, 1106–07 (Nev. 2013). The Court thus finds that Plaintiff's failure to pay
2  the debt owed on the Property is fatal to her quiet title claim. Further, Plaintiff's argument that
3  Defendants lack standing to claim an interest in the property is unavailing. Plaintiff cites only
4  *Leyva v. Nat'l Default Servicing Corp.*, 255 P.3d 1275 (Nev. 2011) in support of this claim, but
5  that case discussed standing to pursue foreclosure proceedings, which have not occurred here.
6  255 P.3d at 1279.

7  Moreover, each of Plaintiff's invalidity arguments fail as a matter of law. First, there is
8  no requirement in Nevada that the promissory note and the DOT be signed by an authorized
9  representative of the lender. Only the borrower, the party being charged with an obligation,
10 must sign the note and the DOT. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 254
11 (Nev. 2012) ("the borrower . . . executes the both the note and the deed of trust"); *see also* NRS
12 111.220 (stating agreements must be signed by the party being charged). While Plaintiff
13 asserts that NRS 111.205 and 104.3201 require the lenders signature, (Resp. PennyMac Mot.
14 Dismiss 10:19–21), these assertions are unsupported by law. NRS 111.205 only requires that
15 the instrument be signed "by the party creating, granting, assigning, surrendering, or declaring
16 the same," which here is Plaintiff, the borrower. NRS 111.205. Further, NRS 104.3201
17 similarly contains no requirement that a lender must sign a promissory note or DOT for either
18 instrument to be enforceable. *See* NRS 104.3201. Accordingly, this argument fails as a matter

---

unable to locate and finds are fake:
1. *McCart-Pollak v. On Demand Capital Grp., LLC*, No. 2:17-cv-00578-RFB-CWH, 2019 WL 1315792 (D. Nev. Mar. 22, 2019). (Resp. PennyMac Mot. Dismiss 4:21–23);
2. *U.S. Bank N.A. v. Farhi*, 94 N.Y.S.3d 231, 233 (N.Y. App. Div. 2019) (Resp. PennyMac Mot. Dismiss 5:11–12);
3. *Bernard v. First Horizon Home Loan Corp.*, No. 2:12-cv-01283-MMD, 2013 WL 12340727 (D. Nev. Mar. 28, 2013) (Resp. PennyMac Mot. Dismiss 7:22–24);
4. *Obot v. Wells Fargo Bank, N.A.*, No. 3:10-cv-00506-HDM, 2011 WL 31197 (D. Nev. Jan. 5, 2011) (Resp. PennyMac Mot. Dismiss. 8:14–16).

Plaintiff is warned that citing fake authorities is a sanctionable offense under Rule 11 of the Federal Rules of Civil Procedure. Due to the presence of these fake authorities, the Court will entertain a Motion for Attorney's Fees for costs incurred by Defendants for the time spent in researching and responding to Plaintiff's Response to PennyMac's Motion to Dismiss.

of law.

Second, Nevada law does not require that the promissory note be recorded. *See Edelstein*, 286 P.3d at 254 (explaining that after execution of the note and DOT, "[the] deed of trust may then be recorded"). Plaintiff locates this recording requirement in NRS 111.315 and 111.325, but both statutes cover record notice of conveyances, which does not encompass promissory notes. *See RH Kids, LLC v. Ditech Financial LLC*, 2021 WL 2660650, at *3 (Nev. Ct. App. 2021) (explaining that the Nevada Supreme Court "impliedly rejected the notion that the acquisition of a promissory note is a conveyance as defined in NRS Chapter 111") (citing *Daisy Trust v. Wells Fargo Bank, N.A.*, 445 P.3d 846, 849 (Nev. 2019)); *see also In re Phillips*, 491 B.R. 255, 271 (Bankr. D. Nev. 2013) ("Negotiation of a promissory note . . . does not convey an interest in real property."). Thus, this argument fails as a matter of law.

Third, under Nevada law, separation of the note and DOT does not render either instrument void. *Edelstein*, 286 P.3d at 259. Plaintiff's "split the note" theory has been rejected by this Court and the Ninth Circuit and cannot invalidate the DOT here. *See Zizi v. Republic Mortg., LLC*, No. 2:12-cv-00018-GMN-PAL, 2013 WL 1249654, at *4 (D. Nev. 2013) (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011)). Accordingly, this argument also fails as a matter of law.

Finally, Plaintiff admits that she received notice that Fannie Mae had purchased the loan from PennyMac on January 7, 2025. (Compl. ¶ 14). While Plaintiff maintains that this notice was improper under *Leyva v. Nat'l Default Servicing Corp.*, 255 P.3d 1275 (Nev. 2011), that case dealt with a beneficiary's compliance with Nevada's Foreclosure Mediation statute, NRS 107.086, and is inapplicable here. 255 P.3d at 1276. To the extent Plaintiff argues that Fannie Mae's interest must be recorded, such a requirement has been rejected in Nevada. *See Daisy Trust*, 445 P.3d at 849; *see also Berezovsky v. Moniz*, 869 F.3d 923, 932 (9th Cir. 2017). Thus, this argument fails as a matter of law as well.

1    Because all of Plaintiff's invalidity theories fail as a matter of law, the Court GRANTS
2    both Motions to Dismiss this claim with prejudice because amendment would be futile.

### 2. Fraudulent Misrepresentation Claim

Plaintiff alleges that Defendants "knowingly misrepresented the validity of the [DOT] and promissory note to induce Plaintiff into executing a fraudulent agreement." (Compl. ¶ 20). PennyMac and MERS argue that Plaintiff has failed to plead this claim with the requisite specificity under FRCP Rule 9(b), that Defendants made no false representations regarding the property or the loan, and that Plaintiff fails to allege damages resulting from any alleged fraudulent misrepresentation. (PennyMac Mot. Dismiss 6:20–7:12). Fannie Mae argues that this claim cannot be asserted against it because Fannie Mae did not acquire an ownership interest in the loan until after origination, and thus could not have made any false representations to induce Plaintiff into executing the loan agreement. (Fannie Mae Mot. Dismiss 4:26–5:3).

To prevail on a claim for fraudulent misrepresentation, Plaintiff must show: (1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation; (2) an intent to induce another's reliance; and (3) damages that result from this reliance. *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007). When a complaint includes allegations of fraud, FRCP 9(b) requires additional specificity, including "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).

Here, Plaintiff alleges only that "Defendants knowingly misrepresented the validity" of the loan agreement by failing to "disclose securitization and procedural defects." (Compl. ¶¶ 20–21). Plaintiff's Complaint fails to specifically allege the time, place, and method by which the alleged misrepresentations were communicated, and thus falls short of the heightened

pleading requirements of Rule 9(b).  Indeed, this Court has rejected much more detailed allegations of fraud as insufficient under Rule 9(b). *See Sarro v. Nevada State Bank*, No. 2:16-cv-01756-GMN-GWF, 2016 WL 6909105, at *5 (D. Nev. Nov. 23, 2016).  While Plaintiff includes additional allegations in her Response to PennyMac's Motion to Dismiss which she argues satisfies Rule 9(b), courts may not look beyond the complaint at the motion to dismiss stage. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)).

Even if Plaintiff had included more detailed allegations in her Complaint, her core theory of fraudulent misrepresentation remains the same: Defendants falsely represented that the loan agreement was valid when it was invalid due to the same theories of invalidity furthered in Plaintiff's quiet title claim. (Compl. ¶¶ 20–21).  Because each of those theories fails as a matter of law, (*see* Section (III)(B)(1)), Plaintiff's fraudulent misrepresentation claim, properly pled, would also fail as a matter of law.  Thus, the Court finds that amendment here would be futile and GRANTS both Motions to Dismiss this claim with prejudice.

### 3. Breach of Contract Claim

Plaintiff alleges that Defendants breached the loan agreement by (1) failing to properly execute and record the promissory note, (2) bifurcating the loan documents, and (3) failing to comply with Nevada recording statues and federal laws. (Compl. ¶ 23).  PennyMac and MERS argue that each of the alleged deficiencies in the loan agreement fail as a matter of law, and that Plaintiff fails to identify the specific provisions of the loan agreement that have been breached. (PennyMac Mot. Dismiss 7:19–28).  Further, PennyMac and MERS contend that because Plaintiff's theory is that alleged deficiencies in the note and DOT invalidate the loan agreement, Plaintiff fails to allege that there is a valid contract, a basic requirement of a breach of contract claim. (*Id.* 7:14–25).

Under Nevada law, the elements of a breach of contract action include the existence of a

valid contract. *Luckett v. Brother Mfg. Corp., Inc.*, 2012 WL 763173, at *1 (Nev. 2012); *see Richardson v. Jones*, 1 Nev. 342, 344 (1865). Plaintiff's theory here—that Defendants breached the loan agreement because the loan agreement is invalid—necessarily fails to meet that element. While Plaintiff argues that FRCP Rule 8(d) allows for two or more statements of a claim in the alternative, Plaintiff furthers no alternative theory. (Resp. PennyMac Mot. Dismiss 7:20–21). Plaintiff's sole theory is that the loan agreement was breached because it is invalid. Not only does that theory fail as a matter of law for the same reasons stated above, (*see* Section (III)(B)(1)), it forecloses any breach of contract claim. Under Nevada law, Plaintiff must show the existence of a valid contract to prevail on a claim for breach of contract. Because Plaintiff argues that the contract is invalid, her claim fails to meet that element, and it accordingly fails as a matter of law. Therefore, the Court GRANTS both Motions to Dismiss this claim with prejudice.

### 4. Claims for Violations of Federal and State Law

Plaintiff alleges that Defendants violated the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2605–2617, by "failing to respond to Plaintiff's QWR within the statutory timeframe." (Compl. ¶ 25). Plaintiff further alleges that "Defendants' actions" constitute violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667(f), and "Nevada recording statutes." (Compl. ¶ 26). The Court addresses each allegation in turn.

#### a. RESPA Claim

Plaintiff alleges that "Defendants violated RESPA by failing to respond to Plaintiff's QWR within the statutory timeframe." (Compl. ¶ 25). Specifically, Plaintiff alleges that PennyMac received her QWR on January 6, 2025, and that she has yet to receive a response in violation of RESPA, 12 U.S.C. § 2605(e). (*Id.* ¶ 15). PennyMac and MERS argue that the QWR sent by Plaintiff was an "improper request" that did not require a response under RESPA because the QWR merely sought a copy of the promissory note. (PennyMac Reply 7:12–8:3,

ECF No. 15). Even if the QWR were proper, PennyMac and MERS contend that Plaintiff's claim fails because she does not identify damages resulting from a failure to respond to the QWR. (PennyMac Mot. Dismiss 9:4–19).

"A QWR is an inquiry sent by the borrower *to the servicer* of a mortgage seeking information pertaining to the mortgage." *Smith v. Bank of America N.A.*, No. 2:11–cv–01313–KJD–RJJ, 2012 WL 1944821, at *2 (D. Nev. May 30, 2012) (emphasis added). Among other things, a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). To substantiate a claim under RESPA, the borrower must also show that they "suffered a pecuniary loss" from the servicer's failure to respond. *Suarez-Smith v. BAC Home Loans Servicing, LP*, No. 2:11-cv-00201-GMN-PAL, 2011 WL 5025143, at *6 (D. Nev. Oct. 21, 2011).

Here, Plaintiff does not provide enough detail in her Complaint to state a claim for relief under RESPA. First, while Plaintiff alleges that she sent a QWR to PennyMac, she does not identify PennyMac as the servicer of the loan. (Compl. ¶¶ 15, 25). While Plaintiff states that PennyMac is the servicer of the loan in her Response to Fannie Mae's Motion to Dismiss, (Resp. Fannie Mae Mot. Dismiss 3:22–23, ECF No. 29), the Court cannot look beyond the Complaint at this stage of the case. *Schneider*, 151 F.3d at 1197 n.1. Second, Plaintiff does not describe the contents of the QWR in her Complaint. (*Id.*). While Plaintiff alleges in her Response to PennyMac's Motion to Dismiss that the QWR sought "servicing details (*e.g.*, payment records) and the original promissory note," (Resp. PennyMac Mot. Dismiss 8:4–5), again, the Court cannot consider allegations pled outside the Complaint when ruling on a motion to dismiss. *Schneider*, 151 F.3d at 1197 n.1. Finally, Plaintiff does not allege that she suffered a pecuniary loss as a direct consequence of PennyMac's failure to respond to the QWR in her Complaint. (Compl. ¶¶ 15, 25). Once more, Plaintiff alleges that she suffered "$500 in

late fees" and "emotional distress" in her Response, (Resp. PennyMac Mot. Dismiss 8:8–10), but the Court cannot consider those allegations. *Schneider*, 151 F.3d at 1197 n.1. Therefore, the Court GRANTS PennyMac's Motion to Dismiss this claim and GRANTS Plaintiff leave to amend this claim against PennyMac.

However, the Court finds that Plaintiff's RESPA claim, properly pled, would still fail as a matter of law if asserted against Defendants Fannie Mae and MERS. As Plaintiff admits in both her Complaint and her Responses to both Motions to Dismiss, the QWR was sent to *PennyMac*, who Plaintiff describes as the servicer of the loan. (Resp. Fannie Mae Mot. Dismiss 3:22–23); (Resp. PennyMac Mot. Dismiss 8:2–10; (Compl. ¶ 15). Under RESPA, only a loan servicer has a duty to respond to a QWR. *See* 12 U.S.C. §§ 2605(e). Because Fannie Mae and MERS are not the loan servicer nor the party who received the QWR, Plaintiff cannot state a claim for relief under RESPA against either Defendant. The Court thus GRANTS Fannie Mae's Motion to Dismiss and dismisses this claim against Fannie Mae and MERS with prejudice.[2]

### b. TILA Claim

Plaintiff alleges only that "Defendants' actions constitute violations of" TILA in her Complaint without any detail about the complained of "actions." (Compl. ¶ 26). Plaintiff provides more detail in her Response to PennyMac's Motion to Dismiss, articulating two alleged violations of TILA: (1) Defendants' failure to provide mandatory disclosures at closing in violation of 15 U.S.C. § 1638(a), and (2) Defendant's failure to notify Plaintiff of the loan's transfer to Fannie Mae in violation of 15 U.S.C. § 1641(g). (Resp. PennyMac Mot. Dismiss 8:27–9:4). The Court notes that the latter allegation appears in Plaintiff's Complaint, but

---

[2] The Court dismisses this claim against MERS with prejudice *sua sponte* because MERS only joined PennyMac's Motion to Dismiss but is more similarly situated to Fannie Mae. (*See* MERS Joinder, ECF No. 7). The Ninth Circuit has held that "[a] trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6)." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citing *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981)).

Case 2:25-cv-00362-GMN-DJA   Document 36   Filed 01/07/26   Page 13 of 14

1    Plaintiff does not connect the allegation to her TILA claim. (Compl. ¶ 14).  PennyMac, MERS,
2    and Fannie Mae argue that both allegations fail to state a claim for relief under TILA.
3    (PennyMac Reply 8:16–9:4); (Fannie Mae Reply 1:24–2:19, ECF No. 30).

4          TILA requires, among other things, disclosure of finance charges and the annual
5    percentage rate. *See* 15 U.S.C. § 1638(a).  A party may allege TILA violations if they can show
6    that that they did not receive required consumer disclosures. 15 U.S.C. § 1640(a).  To prevail
7    on a TILA damages claim, Plaintiff must plead specific facts regarding Defendants' violation
8    of the disclosure requirements set forth in TILA, including the specific disclosures which were
9    not received, which Defendants failed to provide the disclosures, and when Defendants failed to
10   provide the disclosures. *West v. ReconTrust Co.*, No. 2:10-cv-01950-GMN-LRL, 2011 WL
11   3847174, at *6 (D. Nev. Aug. 30, 2011).

12         Here, Plaintiff does not provide enough detail in her Complaint to state a claim for relief
13   under TILA.  While Plaintiff provides more detailed allegations in her Response to
14   PennyMac's Motion to Dismiss, the Court cannot consider allegations made outside of the
15   Complaint. *Schneider*, 151 F.3d at 1197 n.1.  Plaintiff's first alleged violation, involving
16   Defendants' failure to provide mandatory disclosures at closing, appears nowhere in her
17   Complaint. (*See* Compl. ¶¶ 10–15, 26).  Plaintiff's second alleged violation, involving
18   Defendants' failure to notify her of the loan's transfer to Fannie Mae, is not stated as a TILA
19   violation in her Complaint. (*See id.* ¶¶ 14, 26).  Further, Plaintiff admits in her Complaint that
20   she "received notice that Defendant Fannie Mae had purchased the loan from PennyMac" on
21   January 7, 2025. (*Id.* ¶ 14).  To the extent that Plaintiff argues such notice was incomplete or
22   improper under TILA, those details are absent from her Complaint. (*Id.*).  Therefore, the Court
23   GRANTS both Motions to Dismiss this claim and GRANTS Plaintiff leave to amend because it
24   is unclear whether amendment would be futile.
25   ///

Page 13 of 14

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike, (ECF No. 18), is **DENIED**.

**IT IS FURTHER ORDERED** that PennyMac's Motion to Dismiss, (ECF No. 6), is **GRANTED**.

**IT IS FURTHER ORDERED** and Fannie Mae's Motion to Dismiss, (ECF No. 26), is **GRANTED**.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED with prejudice**: Plaintiff's quiet title, fraudulent misrepresentation, breach of contract, and RESPA claims against Fannie Mae and MERS.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED without prejudice** and with leave to amend: Plaintiff's RESPA claim against PennyMac and TILA claims.

**IT IS FURTHER ORDERED** that Plaintiff shall have 21 days from the date of this Order to file an Amended Complaint curing the deficiencies identified in this Order.

**DATED** this __7__ day of January, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court